UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.

KEVIN SAUVE,

Plaintiff,

v.

AL LAMBERTI, in his official capacity
as Sheriff of Broward County, Florida
(Broward County Sheriff's Office), and;
ARMOR CORRECTIONAL HEALTH
SERVICES, INC., a Florida corporation.

Defendants.

_____/

**07-61575**

**CIV - DIMITROULEAS**

ROSENBAUM



## ORIGINAL COMPLAINT

Plaintiff, KEVIN SAUVE, (hereinafter "SAUVE"), through his retained undersigned attorneys, files this Complaint against the Defendants, AL LAMBERTI, in his official capacity as Sheriff of Broward County, Florida (Broward County Sheriff's Office), and; ARMOR CORRECTIONAL HEALTH SERVICES, INC., a Florida corporation, and alleges:

## PRELIMINARY STATEMENT

1. This case is brought pursuant to 42 U.S.C. § 1983. Plaintiff Sauve is a 36-year-old U.S. citizen residing in Broward County, Florida who was incarcerated in the Broward County jail system in Broward County, Florida from about May 1, 2007 until about July 31, 2007. Prior to his incarceration, Sauve had been taking various medications for more than a decade intended to control and stabilize his human immunodeficiency virus (HIV)/ Acquired Immune Deficiency Syndrome (AIDS) status and prevent the disease from causing very serious health deterioration and death. The

day of Sauve's arrest on about May 1, 2007, Sauve told Defendants that he had HIV/AIDS, was currently under a doctor's care for being HIV-positive, was currently prescribed HIV medication and what those medications were and that if he was not permitted to continue those medications as prescribed, his health would suffer greatly. Also on the day of Sauve's arrest, Defendants called a friend of Sauve's who confirmed Sauve's HIV-positive status, recited to Defendants directly from Sauve's current prescription bottles what HIV/AIDS medications Sauve was currently taking and reiterated Sauve's need to continue on those medications.  Despite the knowledge of Sauve's serious medical condition and critical need to continue on HIV/AIDS medications, and despite contact from an outside source verifying to Defendants' Sauve's critical need for HIV/AIDS medication, and despite Sauve's repeated oral and written requests for HIV/AIDS-related medication, Sauve was denied access to any medications for his HIV/AIDS condition throughout his over ninety (90) day incarceration.  As a result of Defendants' willful and deliberate indifference to Sauve's very serious medical needs during his incarceration, Sauve's health deteriorated irreparably and substantially. Defendants intentionally refused to provide and in fact did deny Sauve minimally adequate medical care and treatment in violation of the Eighth and Fourteenth Amendments to the United States Constitution. Defendants' acts are shocking to the conscience, are a severe deprivation of civil rights, and are intolerable in a society governed by civil laws and considerations of due process.

## JURISDICTION AND VENUE

2. This Court's jurisdiction is invoked pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3). The substantive claims herein arise under 42 U.S.C. § 1983; and the Eighth and Fourteenth Amendments to the United States Constitution.

## PARTIES

3. At all times material, Sauve is and was a citizen of the United States and a resident of Broward County, Florida, which is in the Southern District of Florida. Sauve was incarcerated within the Broward County Jail system from about May 1, 2007 until about July 31, 2007. During this time frame he was within the custody and control of the Defendants.

4. The Broward County Sheriff's Office is responsible for the administration, operation and supervision of the Broward County jail system, and for the promulgation and enforcement of rules, regulations, policies, customs and practices relevant thereto and at all times pertinent hereto was acting in that capacity and under color of state law. Whoever is the Sheriff of Broward County is the individual with final policy-making authority for BSO and its multiple detention facilities, including the Broward County Jail. Defendant Sheriff Al Lamberti ("Sheriff Lamberti"), as the Sheriff of Broward County, is being sued in his official capacity as Sheriff of Broward County. The Broward County Sheriff's Office is the nation's largest nationally accredited sheriff's department with 6,300 employees, including more than 2,800 certified deputies and more than 600 fire rescue professionals. One of BSO's divisions is its Department of Detention and Community Control ("DODCC"). Pursuant to 18.40(a) of the Broward County Administrative Code. "[t]he Sheriff

[Lamberti], as the Chief Correctional Officer, is solely responsible for the operation of the existing correctional System . . .". DODCC operates the 12th largest local jail system in the United States. DODCC oversees all jail facility operations and community-based offender programs within Broward County. According to BSO, approximately 77,000 inmates are annually booked into BSO's jails for crimes ranging from civil infractions to murder. The average daily population at all jail facilities including work-release inmates, exceeds 4,600. DODCC operates and administers five jail facilities in Broward County: (1) the Main Jail (the Broward County Jail), also home to Central Intake (Inmate Booking); (2) the Joseph V. Conte Facility; (3) the Stockade Facility; (4) the North Broward Bureau, and; the Sheriff's North Jail.

5.       Defendant Armor Correctional Health Services, Inc., ("Armor"), is a Florida corporation which at all times relevant to this Complaint contracted with the Sheriff of Broward County and/or Broward County to provide medical/health care to prisoners within the Broward County Jail system and at all times pertinent hereto, Defendant Armor was acting and under color of law.

## CONDITIONS PRECEDENT

6.       Plaintiff has complied with all conditions precedent in this case and exhausted all applicable administrative remedies, or they have been waived.

## GENERAL FACTUAL ALLEGATIONS

7.       Prior to his incarceration, Sauve for over a decade had been taking various medications and "drug cocktails" designed to slow or prevent his HIV-status (and later HIV/AIDS status) from causing substantial health deteriorating and even death. Sauve's

4

HIV/AIDS-positive status is a very serious medical condition. At all times material, Sauve could not function adequately or maintain his health without access to critical HIV/AIDS medications and/or drugs. At all times material, it was and is virtually certain that Sauve's health would deteriorate substantially if he was/is unable to ingest HIV/AIDS medications and/or drugs.

8.      From about May 1, 2007 until about July 31, 2007 Sauve was confined in the Broward County jail system and was during that time in the custody, care and control of Defendants.

9.      On or about May 1, 2007 Sauve was arrested by the Fort Lauderdale Police Department for a drug-related offense. Once in handcuffs, Sauve explained to the arresting officer that he was HIV-positive and was concerned that if he was going to be detained at a jail facility for any extended period of time he would need access to critical HIV/AIDS medications/drugs. Therefore, Sauve requested that before he was brought to a jail facility he be allowed to take a prescribed dose of HIV medication. Fort Lauderdale Police officers then escorted Sauve into his home and allowed him to retrieve his prescribed HIV/AIDS medications. Sauve was thereafter transported to the Broward County Main Jail and his bond was set according to the standard bond schedule at $500,000.

10.     On or about May 1, 2007, Sauve was booked into the Broward County Main Jail. During the standard booking process Sauve was interviewed by a nurse. Sauve explained to this nurse that he was HIV-positive, disclosed the name of the doctor who was currently treating him for HIV/AIDS, disclosed what HIV/AIDS medications he was currently taking, and stressed that it was imperative that his medication intake not be

disrupted. Defendants' written medical intake form confirms that Sauve disclosed he was HIV-positive, the HIV/AIDS medications he was taking, and his primary care physician.

11.     Based on this information, the Defendants called Sauve's partner, Paul Black, who confirmed that Sauve was indeed HIV-positive. Mr. Black also confirmed that Sauve was currently under a doctor's care for his HIV status and that it was important that Sauve get his HIV medications as prescribed. Mr. Black gave Defendants the name, address and phone number of this treating doctor and stated that Sauve's prescriptions were provided by a Walgreens pharmacy located on the corner of "Commercial [Boulevard]and Sixth Avenue" in Fort Lauderdale, Florida.

12.     Sometime thereafter, Defendants contacted the pharmacy where Sauve filled his regular HIV/AIDS prescriptions and verified what medications Sauve was taking and when he was required to take them.

13.     On or about May 4, 2007, while at the Broward County Jail, Sauve, very concerned that he did not have access to his critical regular HIV/AIDS medications (or any HIV/AIDS medications for that matter), made a written request for HIV medications. This request produced no results.

14.     On or about May 24, 2007, Sauve made another written request for HIV medication. In this request Sauve stated that he was suffering from piercing ear pain possibly from an infection, night sweats, weight loss, loss of appetite and that he had gone almost a month without critical HIV medications. This request produced no results.

15.     On or about June 2, 2007, Sauve made two more separate written requests for HIV medication. The receipt of each of these written requests is acknowledged by the signatures of two separate members of the Defendants' medical staff. In these requests

6

Sauve writes that he has gone without any HIV medication for over a month and that on four separate occasions he has told the jail medical staff the names of his HIV medications, which he desperately needed. Sauve writes that he is getting very ill, has a fever, night sweats and a lack of appetite.

16.    On or about June 3, 2007, Sauve made two more written requests to Defendants for HIV medication. The receipt of each of these written requests is acknowledged by the signature(s) of person(s) from the Defendants' medical staff. In these requests Sauve reiterates that he is not getting any HIV medication and is getting very sick. He writes that his weight has dropped from 158 pounds to 148 pounds, (more than a 7% decrease in total body weight), and that he needs to be treated for an infection and cold sores due to a low T-Cell count. Sauve specifically requests medication to treat Atypical Myco Bacterial (MAC). These MAC medications are commonly prescribed to patients with advanced HIV to treat opportunistic infections.

17.    On or June 10, 2007, Sauve made another written request for treatment. In this request Sauve writes that he cannot take MAC medication without Benadryl because the MAC medications give him hives. Sauve writes that he is not allergic to MAC medications, except for a MAC medication called Batrium.

18.    On or about June 13, 2007, Sauve made another written request for treatment/HIV medication. In this request Sauve states that he is not being treated with the MAC medication correctly and that he needed to see a doctor. Sauve also stated that he was still suffering from an ear infection.

19.    On or about June 18, 2007, Sauve made another written request for treatment/medication. In this request Sauve states that his lungs are filling with fluid and

that he needs to be checked for pneumonia. Pneumonia is one of the many opportunistic infections that are common among people with advanced HIV and/or AIDS.

20.     In addition to the above listed written requests Sauve made countless oral requests to Defendants for HIV/AIDS medication. On several occasions Sauve was told by medical staff that his HIV medication could not be restarted without first doing some expensive medical tests and that Defendants were unwilling to pay for those necessary tests.

21.     In addition to the written requests for medical care from Sauve, both Defendants were also contacted by Shane Gunderson ("GUNDERSON") of the Office of the Public Defender for Broward County, Florida. Gunderson is currently the Director of Client Services for the Office of Public Defender for Broward County.

22.     On or about June 4, 2007, Gunderson contacted Karen Davies ("Davies") the System Manager for Defendant Armor and Barbara Hanson-Evans ("Hanson-Evans") the Health Services Administrative Coordinator for Defendant B.S.O. Gunderson alerted Davies and Hanson-Evans to Sauve's condition and that as of June 4, 2007, Sauve had not yet received any HIV medication, had lost 12 pounds and was experiencing night sweats, fever, loss of appetite, and ear infections.

23.     On or about June 5, 2007, Davies responded to Gunderson and stated that Sauve had been evaluated and that before any inmate could be re-started on HIV medication it is imperative that Defendants obtain as much history from the inmate's private doctor as possible. Davies went on to state that Defendant had just received records from Sauve's physician. She offered no explanation for why over one month had passed before Defendants received such records.

8

24.     At several Broward Circuit Court hearings during his incarceration, Sauve or an attorney acting on his behalf complained to the court that Sauve had repeatedly asked Defendants to provide him access to HIV/AIDS medications and Defendants were deliberately ignoring and/or denying his requests.

25.     Despite subjective knowledge of the above information and knowledge of Sauve's serious risk of harm if he did not timely receive HIV/AIDS medications, Defendants willfully disregarded this risk of harm to Sauve and willfully refused to provide Sauve with his critical medications.

26.   On or about July 31, 2007, Judge Cynthia G. Imperato, the Broward County Circuit Court Judge presiding over Sauve's criminal case, lowered Sauve's $500,000 bond to zero dollars ($0) and released Sauve with an ankle monitor.  The circuit court made this drastic bond reduction because during Sauve's three-month incarceration within the Broward County Jail system the Defendants had failed to provide Sauve with any HIV/AIDS medication.  This caused Sauve's HIV/AIDS to greatly worsen and progress to grave levels.

27.     At all times material to this Complaint, it was the policy, practice, custom and/or procedure of Armor to refuse and/or delay providing HIV/AIDS medications to prisoners and pre-trial detainees as a cost-saving method of administering medical care for the Broward County Sheriff's Office.  This policy, practice, custom and/or procedure constitutes deliberate indifference to the known serious medical needs of Sauve and other prisoners and/or detainees within the Broward County Jail system and shocks the conscious.

28.     At all times material to this Complaint, it was the policy, practice, custom and/or procedure of the Broward County Sheriff's Office to refuse and/or delay providing

HIV/AIDS medications to prisoners and pre-trial detainees in the custody of the Broward County Sheriff's Office. This policy, practice, custom and/or procedure constitutes deliberate indifference to the known serious medical needs of Sauve and other prisoners and/or detainees and shocks the conscious.

## COUNT I
### (42 U.S.C. § 1983 Claim against
### Defendant Sheriff Lamberti in his Official Capacity)

29.     Sauve re-adopts, incorporates by reference, and re-alleges Paragraphs 1 through 28 as fully set forth above.

30.     Count I is brought against Defendant Sheriff Lamberti in his official capacity pursuant to 42 U.S.C. § 1983 for deliberate indifference to the critical medical needs of Sauve, as an individual with HIV/AIDS requiring medication to prevent substantial health deterioration and even death.

31.     The Broward County Sheriff's Office and/or its employees or agents, knew at the time or very shortly after Sauve was admitted to the Broward County jail system on or about May 1, 2007 that Sauve was in serious medical need of common, inexpensive, readily available HIV/AIDS medications that were necessary to preserving Sauve's health and preventing substantial health deterioration and even death.

32.     Despite the Broward County Sheriff's Office's and/or its employees' or agents' knowledge of Sauve's serious medical needs, Defendant Sheriff's Office was deliberately indifferent to those serious medical needs in failing to provide any HIV/AIDS medications to Suave for over three months.

10

33.    The Broward County Sheriff's Office and/or its employees or agents knew that taking no action and/or insufficient action to accommodate Sauve's serious needs could result in the rapid and permanent deterioration of Sauve's health and even his death.

34.    At all times relevant to this Complaint, it was Defendant Sheriff Lamberti's widespread custom, policy, practice and/or procedure to outright deny medical treatment of or be deliberately indifferent to the serious medical needs of Plaintiff and other prisoners/detainees incarcerated within the Broward County Jail system who have HIV/AIDS.

35.    As a direct and proximate result of the Sheriff's Office's institutional outright denial of medical treatment and/or deliberate indifference toward Sauve's serious medical needs, Sauve suffered great physical injury, pain, discomfort and mental anguish in violation of Sauve's Eighth and Fourteenth Amendment rights.

36.  As a result, Mr. Sauve suffered damages in an amount be determined at trial for his physical injuries, and emotional injuries including embarrassment, humiliation, mental anguish, and fear.  Sauve also seeks punitive damages, reasonable attorneys' fees and costs, pre-judgment interest and further relief as the Court deems appropriate.

**WHEREFORE,** Mr. Sauve respectfully requests this Court to (1) enter judgment declaring that the acts and omissions of Defendant Sheriff Lamberti, as set forth above, violate rights secured to Mr. Sauve by the Eighth and Fourteenth Amendments to the Constitution of the United States, (2) that the Court award actual, compensatory, and punitive damages to Mr. Sauve, (3) the Court require Defendant Sheriff Lamberti to pay

the legal costs and expenses herein including reasonable attorneys' fees, and (4) that the Court grant such further relief as it deems appropriate.

## COUNT II
### (42 U.S.C. § 1983 claim against Defendant Armor)

37.     Sauve re-adopts, incorporates by reference, and re-alleges Paragraphs 1 through 28 as fully set forth above.

38.     Count I is brought against Defendant Armor pursuant to 42 U.S.C. § 1983 for deliberate indifference to the critical medical needs of Sauve, as an individual with HIV/AIDS requiring medication to prevent substantial health deterioration and even death.

39.     Defendant Armor and/or its employees or agents, knew at the time or very shortly after Sauve was admitted to the Broward County jail system on or about May 1, 2007 that Sauve was in serious medical need of common, inexpensive, readily available HIV/AIDS medications that were necessary to preserving Sauve's health and preventing substantial health deterioration and even death.

40.     Despite Defendant Armor's and/or its employees' or agents' knowledge of Sauve's serious medical needs, Defendant Armor was deliberately indifferent to those serious medical needs in failing to provide any HIV/AIDS medications to Suave for over three months.

41.     Defendant Armor and/or its employees or agents knew that taking no action and/or insufficient action to accommodate Sauve's serious needs could result in the rapid and permanent deterioration of Sauve's health and even his death.

12

42.   At all times relevant to this Complaint, it was Defendant Armor's widespread custom, policy, practice and/or procedure to outright deny medical treatment of or be deliberately indifferent to the serious medical needs of Plaintiff and other prisoners/detainees incarcerated within the Broward County Jail system who have HIV/AIDS.

43.   As a direct and proximate result of Defendant Armor's institutional outright denial of medical treatment and/or deliberate indifference toward Sauve's serious medical needs, Sauve suffered great physical injury, pain, discomfort and mental anguish in violation of Sauve's Eighth and Fourteenth Amendment rights.

44. As a result, Mr. Sauve suffered damages in an amount be determined at trial for his physical injuries, and emotional injuries including embarrassment, humiliation, mental anguish, and fear.  Sauve also seeks punitive damages, reasonable attorneys' fees and costs, pre-judgment interest and further relief as the Court deems appropriate.

**WHEREFORE,** Mr. Sauve respectfully requests this Court to (1) enter judgment declaring that the acts and omissions of Defendant Armor, as set forth above, violate rights secured to Mr. Sauve by the Eighth and Fourteenth Amendments to the Constitution of the United States, (2) that the Court award actual, compensatory, and punitive damages to Mr. Sauve, (3) the Court require Defendant Armor to pay the legal costs and expenses herein including reasonable attorneys' fees, and (4) that the Court grant such further relief as it deems appropriate.

## DEMAND FOR TRIAL BY JURY

Sauve demands trial by jury on all issues and all counts of this Complaint so triable as a matter of right.

Dated: 11/02/07

ATTORNEYS FOR PLAINTIFFS

CASSATA & HANSON, P.L.
320 Southeast Tenth Court
Fort Lauderdale, Florida 33316
Phone:        (954) 364-7803
Facsimile:    (954) 251-4787

BY: _____
Dion J. Cassata, Esq.
Fla. Bar No. 672564
dion@cassatahanson.com

GREG M. LAUER, P.A.
15 S.W. Tenth Street
Fort Lauderdale, Florida 33315
Phone:        (954) 559-0647
Facsimile: (954) 523-1994

BY: _____
Greg M. Lauer, Esq.
Fla. Bar No.  652709
greg@gregmlauer.com

14

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THIS FORM.)

**I. (a) PLAINTIFF**

KEVIN SAU~~CIV - DIMITROULEAS~~ *ROSENBAUM*

07-61575

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF
(EXCEPT IN U.S. PLAINTIFF CASES)

BROWARD

**(c)** ATTORNEYS (FIRM NAME, ADDRESS AND TELEPHONE NUMBER)

CASSATA & HANSON, P.L., 320 Southeast Tenth Court, Fort Lauderdale, Florida 33316, (954) 364-7803;
GREG M. LAUER, P.A., 15 Southeast Tenth Street, Fort Lauderdale, Florida 33315, (954) 559-0647

**DEFENDANTS**

AL LAMBERTI, in his official capacity as Sheriff of Broward County, Florida (Broward County Sheriff's Office), et al.

NOV - 2 2007
INTAKE
CLARENCE MADDOX
S.D. OF FLA. - FT. LAUD.

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES USE THE LOCATION OF THE TRACT OF LAND INVOLVED

ATTORNEYS (IF KNOWN)

0:07CV 61575-WPD-Rosenbaum

**(d) CIRCLE COUNTY WHERE ACTION AROSE**

MONROE, **BROWARD**, DADE, PALM BEACH, MARTIN, ST. LUCIE, INDIAN RIVER, OKEECHOBEE, HIGHLANDS

| II. BASIS OF JURISDICTION (PLACE AN X IN ONE BOX ONLY) | III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN X IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) (FOR DIVERSITY CASES ONLY) | | | |
|---|---|---|---|---|

| | | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|---|
| ☐ 1 U.S. Government Plaintiff | ☒ 3 Federal Question (U.S. Government Not a Party) | Citizen of This State ☐1 | ☐1 | Incorporated or Principal Place of Business in This State | ☐4 | ☐4 |
| ☐ 2 U.S. Government Defendant | ☐ 4 Diversity (Indicates Citizenship of Parties in Item III | Citizen of Another State ☐2 | ☐2 | Incorporated and Principal Place of Business in Another State | ☐5 | ☐5 |
| | | Citizen or Subject of a Foreign Country ☐3 | ☐3 | Foreign Nation | ☐6 | ☐6 |

**IV. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)

Suit is brought pursuant to 42 U.S.C. § 1983. Defendants' willfully denied Plaintiff access to critical HIV/AIDS medications while he was incarcerated in the Broward County Jail system, resulting in substantial and irreparable deterioration of Plaintiff's health, in violation of Plaintiff's Constitutional rights.

**IVA.** ___3-4___ days estimated (for both sides) to try entire case

**V. NATURE OF SUIT** (PLACE AN X IN ONE BOX ONLY)

| CONTRACT | TORT | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | PERSONAL INJURY | PERSONAL INJURY | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury— Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury— Product Liability | ☐ 625 Drug-Related Seizure of Prop. 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | ☐ 630 Liquor Laws | PROPERTY RIGHTS | ☐ 450 Commerce/ICC Rates |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | PERSONAL PROPERTY | ☐ 650 Airline Regs | ☐ 830 Patent | ☐ 470 Racketeer Influenced & Corrupt Organization |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | SOCIAL SECURITY | ☐ 850 Securities/Commodity/ Exchange |
| | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | LABOR | ☐ 861 HIA (1395ff) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 160 Stockholders Suits | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | |
| ☐ 190 Other Contract | | | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liab | | | | ☐ 864 SSID Title XVI | ☐ 892 Econ. Stabilization Act |
| REAL PROPERTY | CIVIL RIGHTS | PRISONER PETITIONS | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | | FEDERAL TAX SUITS | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | Habeas Corpus | ☐ 740 Railway Labor Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent, Lease & Eject. | ☐ 443 Housing/ Accommodations | ☐ 530 General | ☐ 790 Other Labor Litigation | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 900 Appeal of Fee Determ. Equal Access/Justice |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | ☐ 791 Empl. Ret. Inc. Security Act | | ☐ 950 Const. of State Statute |
| ☐ 245 Tort Product Liability | ☒ 440 Other Civil Rights | ☐ 540 Mandamus and Other | | | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Prop. | | ☐ 550 Other | | | |

**VI. ORIGIN** (PLACE AN X IN ONE BOX ONLY)

☒ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district  ☐ 6 Multidistrict Litigation  ☐ 7 Appeal to District Judge from Magistrate Judgment

**VII. REQUESTED IN COMPLAINT**
CHECK IF THIS IS A **CLASS ACTION**
☐ UNDER F.R.C.P. 23
DEMAND $
CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☒ YES ☐ NO

**VIII. RELATED CASE(S) IF ANY** None (See instructions)
JUDGE _____ DOCKET NO. _____

DATE 11/02/2007

SIGNATURE OF ATTORNEY OF RECORD

UNITED STATES DISTRICT COURT
S/F 1-2
REV. 9/94

FOR OFFICE USE ONLY: Receipt No. 541426

Date Paid: _____

Amount: 350.00

M/ifp: _____