Sauve v. Al Lamberti, et al.
CASE NO. 07-61575-Civ-DIMITROULEAS/Rosenbaum

# AFFIDAVIT OF CHAD ZAWITZ, M.D.

## AFFIDAVIT

STATE OF ILLINOIS        )
                         ) ss:
COUNTY OF COOK           )

BEFORE ME, the undersigned authority, personally appeared, Chad Zawitz, M.D., personally known to me and who, after first being duly sworn upon oath, deposes and says as follows:

1. My name is Chad Zawitz, M.D.

2. I am over the age of eighteen (18) and am sui juris in all respects.

3. I hold medical licensure for the State of Illinois. I am Board Certified in Infectious Disease. At all times relevant to the allegations in the Complaint made by Kevin Sauve, I was and am currently practicing as the only Infectious Disease/HIV Specialist at Cook County Jail in Chicago, Illinois. Cook County Jail is the largest pre-trial facility in the United States. On any given day, there are approximately 11,000 detainees at the facility and on any given day, at least 300 of these detainees are HIV positive.

4. I am an expert in HIV care and am thoroughly versed in the most widely recognized treatment guidelines in the United States. I have extensive experience in correctional HIV healthcare and see clients like Kevin Sauve on a daily basis. I recognize, understand and appreciate that there are certain conditions that cause barriers to adherence with antiretroviral medications. These barriers include but are not limited to mental illness and drug abuse.

5. A prudent healthcare provider has an obligation to address barriers to adherence, prior to recommending antiretroviral treatment therapies. Failure to address these barriers can lead to non-compliance and long term complications such as resistance. Resistance occurs when the HIV virus develops mutations that no longer respond to the antiretroviral medication. These mutant strains replicate and affect future treatment options and can cause a patient to have a shortened life span. It is better for a patient not to take antiretroviral medications at all if they cannot comply with the prescribed regime on a long term basis.

6. I have carefully reviewed the pertinent medical records with respect to the subject complaint including but not limited to the records from Armor Correctional Health Services, Inc., the deposition transcript of Sarah Serrano

from Broward House and the deposition of Mr. Sauve's private physician, Dr. Robert Hunt.

7. It is my understanding that Kevin Sauve was incarcerated at the Broward County Jail on May 2, 2007. An Initial Health Screening was completed and Mr. Sauve admitted to a sixteen year history of being HIV positive, to a history of using alcohol and withdrawing from Xanax and Percocet in the past. He also admitted to actively using crystal meth and indicated he last used the drug the day prior to his arrest. Crystal meth is a highly addictive stimulant that produces a long-lasting, euphoric effect on the user and can produce psychotic symptoms that last for months or years after the drug is stopped. There have been studies that show that the use of crystal meth contemporaneously with antiretroviral medications is contraindicated and can lead to non-compliance.

8. Mr. Sauve informed the jail staff that he had a history of depression, anxiety, attention deficit disorder and had been treated by Broward House for mental illness. On exam, Mr. Sauve was alert and oriented. At the time of the Initial Health Screening, Mr. Sauve reported that he was taking a combination of Truvada and Emtriva which are both antiretroviral medications prescribed for the treatment of HIV. The regime identified by Mr. Sauve was completely inappropriate since Truvada contains Emtriva; therefore, Emtriva is never prescribed in combination with Truvada. The staff at the jail was unsuccessful in their attempt to verify if and what medication regime Mr. Sauve was on.

9. On May 7, 2007, Mr. Sauve was evaluated by a Physician Assistant to obtain additional information regarding his HIV status. Mr. Sauve admitted to non-compliance with his antiretroviral regime, and he again described an inappropriate regime. Furthermore, Mr. Sauve again admitted to a history drug abuse. On May 9, 2007, Mr. Sauve reported that he had recent treatment for emotional problems and anxiety. An assessment was done and Mr. Sauve weighed 148 lbs. On May 11, 2007, Mr. Sauve requested to speak with a mental health counselor regarding treatment for substance abuse.

10. Mr. Sauve was evaluated by a Psychiatric Advanced Registered Nurse Practitioner on May 21, 2007 and diagnosed with mood disorder and Elavil, an antidepressant was ordered. On June 3, 2007, Mr. Sauve requested to speak with the psychiatrist about having the Elavil dosage increased. He was evaluated by a Nurse Practitioner on June 6, 2007 and at this time, the pharmacy was able to verify the antiretroviral medications that Mr. Sauve had previously filled. Mr. Sauve again told the Nurse Practitioner that he had been non-compliant and "on and off" the medication.

11. On June 19, 2007, the health care providers at the jail consulted with Dr. Beth Weaver, an infectious disease doctor and HIV specialist, regarding the initiation of an antiretroviral drug regime for Mr. Sauve. On June 24, 2007, Mr. Sauve was evaluated and found to be medically stable and was

approved for all types of work, including food handling. On July 12, 2007, the Advanced Nurse Practitioner spoke with Mr. Sauve regarding the possibility of starting an antiretroviral regime. Mr. Sauve refused to discuss treatment and indicated that he was scheduled to be released from jail and intended to follow up with his primary care physician. At the time of this evaluation, Mr. Sauve weighed 154 pounds which represented a 6 lb. weight gain since he was incarcerated.

12. During this incarceration, Mr. Sauve was evaluated for drug treatment by Sarah Serrano, MSW (Masters in Clinic Social Work) of the Broward House. According to Ms. Serrano's sworn deposition testimony and her written evaluation done on June 27, 2007, Kevin Sauve was not a candidate for outpatient substance abuse treatment due to the extent of his dependency on drugs. It was Ms. Serrano's opinion that Mr. Sauve would require at least six months of inpatient drug rehabilitation prior to being a candidate for outpatient treatment. This screening and assessment by Broward House supports the assessment that Mr. Sauve had a significant drug problem that would affect his ability to comply with antiretroviral medications.

13. According to the sworn deposition testimony of Robert Hunt, DO, Mr. Sauve's long term treating physician, Kevin Sauve had a history of non-compliance with medical care regarding his HIV.

14. Based upon my review of the above records, as well as my education, training and experience, it is my opinion that the health care workers of Armor Correctiional Health Services, Inc. acted within the acceptable standard of care in the care and treatment of Kevin Sauve. Mr. Sauve should not have been started on HIV medications during his 2 ½ month incarceration at the Broward County Jail because of his mental health issues and serious drug addiction problem. Mr. Sauve was appropriately assessed, monitored and treated during his incarceration and there was no evidence that anyone was deliberately indifferent to his health care needs.

FURTHER AFFIANT SAYETH NOT.

_____
Chad Zawitz, M.D.

SWORN TO AND SUBSCRIBED BEFORE ME this 24 day of Sept., 2008.

_____
Notary Public

My Commission expires: March 10, 2012

"OFFICIAL SEAL"
Madelen Lachin
Notary Public, State of Illinois
Cook County
My Commission Expires March 10, 2012